MONTGOMERY McCRACKEN
WALKER & RHOADS, LLP
437 Madison Ave
New York, New York 10022
(212) 867-9500
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| A. HARTRODT (U.S.A.), INC.,<br><br>                                          Plaintiff,<br><br>- against –<br><br>ALNO AG,<br><br>                                          Defendant.<br><br>and<br><br>ANTHONY SODONO III, ESQ.,<br><br>                                          Garnishee. | Civil Action No.:<br><br>**VERIFIED COMPLAINT AND *EX PARTE* REQUEST FOR ISSUANCE OF MARITIME ATTACHMENT AND GARNISHMENT** |

Plaintiff, A. HARTRODT (U.S.A.), INC. ("Plaintiff"), by its attorneys, Montgomery McCracken Walker & Rhoads LLP, for its verified complaint against the defendant, ALNO AG ("ALNO AG" or "Defendant") herein, alleges on information and belief as follows:

## PARTIES

1. At all material times, Plaintiff was and is a corporation duly organized and existing under the laws of one of the fifty states, with an office and principal place of business at 777 Sunrise Highway, Lynbrook, New York and was at all times hereinafter mentioned, a licensed ocean freight forwarder and agent for non-party Cargo Consolidation Corp ("CCC"). CCC was at all material times a Federal Maritime Commission-licensed non-vessel operating common carrier in the business of arranging ocean carriage of cargo

onboard ships. CCC was operated and owned by Plaintiff or its parent, Hartrodt, AG. .

2. At all material times, Defendant was and is a corporation organized and existing under the laws of a foreign sovereign, with an office and principal place of business at Hiligenbergere Strasse 47, Pfullendorf, Germany. At all times hereinafter mentioned, Defendant was engaged in the business of manufacturing and exporting kitchen furniture. Defendant is not found either in this district, or in any other convenient adjacent jurisdiction within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B").

3. At all material times, non-party ALNO USA CORPORATION ("ALNO USA") was and is, a New York corporation with an office and principal place of business located at 150 East 58th Street, Suite 1021 New York, New York 10155. ALNO USA is the U.S. subsidiary of Defendant ALNO AG.

4. At all material times ALNO USA was also engaged in the business of kitchen design and manufacturing.

5. At all material times, Garnishee ANTHONY SODONO III, ESQ. ("hereinafter, Garnishee Sodono"), was designated as the Assignee for the Benefit of Creditors of ALNO USA by execution of a Deed of Assignment for the Benefit of Creditors dated July 18, 2017. Garnishee Sodono is presently acting as the Assignee in the State Court liquidation proceeding, pending before the Chancery Division, Probate Part, Bergen County, Docket No. P-381-17.

## JURISDICTION AND VENUE

6. This is a case of admiralty and maritime jurisdiction as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal

Rules of Civil procedure and also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

7. Venue is proper because Defendant is an alien corporation and because property of Defendant is, or may soon be, within this District.

## FACTS

8. Between January 1, 2016 and June 30, 2017, ALNO USA, on behalf of its parent company, ALNO AG, engaged Plaintiff to provide for the ocean carriage of multiple containers of kitchen furniture (the "Shipments") from ALNO AG in Germany to the U.S. for delivery to Alno USA.

9. Plaintiff, acting as agent for CCC, arranged for CCC to provide the ocean carriage. CCC as the ocean carrier issued its bills of lading for the Shipments.

10. The ocean carriage of the Shipments was fully performed by CCC and the cargo was delivered by its agent, Plaintiff, in accordance with its bills of lading.

11. Pursuant to the terms and conditions on the backside of the bills of lading, the "Merchant" to the bill of lading, is defined as including the "Shipper, Consignee, holder of this Bill of Lading, the receiver of the Goods, and the owner of the Goods carried thereunder," are liable to CCC for any charges owed, including freight. A copy of the terms and conditions is annexed hereto as **"Exhibit A"**.

12. Defendant, as the shipper on the bill of lading, is liable to CCC for its ocean freight.

13. The sum total of freight for the Shipments was $176,101.76, exclusive of interest, incidental expenses, and cost.

14. Although duly demanded by Plaintiff, the sum of $176,101.76 has not been paid by ALNO USA or by Defendant.

15. On or about July 18, 2017 ALNO USA, as assignor, executed a Deed of Assignment for the Benefit of Creditors in favor of ANTHONY SODONO, III, c/o McManimon, Scotland & Bauman, LLC, 7 Livingston Avenue, Roseland New Jersey 07068 as assignee.

## COUNT I
### (Breach of Maritime Contract – Rule B)

16. Plaintiff realleges as though fully set forth at length and incorporated herein by reference all of the allegations of paragraphs 1 through 12, of its Verified Complaint.

17. Defendant's failure to make full and timely payment of the ocean freight, despite demand, is a breach of contract by Defendant.

18. Plaintiff seeks issue of process of maritime attachment so that it may obtain security for its claims. No security for Plaintiff's claims has been posted by Defendant or anyone acting on its behalf to date.

19. Defendant cannot be found within this district within the meaning of Rule B, but is believed to have, or will have during the pendency of this action, property and/or assets in this jurisdiction including, but not limited to, cash, funds, freight, hire, and/or credits which are held for the benefit of or will be allocated or owing to ALNO AG, in the hands of Garnishees in this District, including but not limited to ANTHONY SODONO III, ESQ.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against Defendant ALNO AG, citing it to appear and to answer under oath all and singular the matters alleged in this Verified Complaint;

B. That because Defendant ALNO AG cannot be found within the district, that property,

goods and chattels, or credits and effects, namely cash, letters of credit, freights, sub-freights, credits, or other monies belonging to, allocated to, or which will become owing to, or established by or on behalf of Defendant, within a bank account or accounts maintained in Defendant's name with garnishees, be attached in this proceeding to the amount of the claim asserted herein under a Writ of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims;

C. That since it appears that U.S. Marshals Service lacks sufficient staff to effect service of process of Maritime Attachment and Garnishment promptly or economically, and that since appointing a person over 18 years of age and who is not a party to this action will result in substantial economies of time and expense, such a person be appointed pursuant to Fed. R. Civ. P. 4(c) to serve process of Maritime Attachment and Garnishment in this action;

D. That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending or which may be initiated in the future, including any appeal thereof; and

E. For such other, further and different relief as this Court may deem just and proper.

Dated:    New York, New York
          February 1, 2019

                        Montgomery McCracken Walker & Rhoads LLP
                        *Attorneys for Plaintiff*

                    By:   /s/ Eric Chang
                          Eric Chang
                          echang@mmwr.com

437 Madison Avenue
New York, NY   10022
(212) 867-9500

## VERIFICATION

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

ERIC CHANG, being duly sworn deposes and says:

1. I am a member of the Bar of this Court and the attorney for Plaintiff herein. I have read the foregoing Verified Complaint and know the contents thereof and that the same are true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are statements and documentation provided by Plaintiff, representatives of said corporation, and conversations had with representatives of said corporation.

The reason that this Verification is not made by Plaintiff is that Plaintiff is a foreign corporation, none of whose officers are in this District.

_____
ERIC CHANG

Sworn to before me this
1st day of February, 2019

_____
NOTARY PUBLIC

VINCENT M. DeORCHIS
Notary Public, State Of New York
No.02DE4969731
Qualified In New York County
Commission Expires July 23, 2006 2020

Exhibit "A"

**TERMS CONTINUED FROM FACE HEREOF**

IN ACCEPTING THIS BILL OF LADING, the Merchant agrees to be bound by all of its terms, conditions and limitations, as well as the provisions of Carrier's applicable Tariff, which shall be considered incorporated herein as if set forth at length and which with these terms, conditions and limitations, shall govern the relationship between the Merchant as defined below, and Cargo Consolidation Corp. and the Owner or Demise Charterer of the ocean vessel. The names of the Owner and/or Demise Charterer may be obtained from the Carrier's Agent or from Lloyd's Register. The Carrier shall have the right, without notice, to ship goods on a substitute vessel or other watercraft if he or any other carrier, or by any other mode of transport.

**1. Clause Paramount.** For carriage to or from or through any port of the United States or its territories or possessions, this bill of lading shall have effect subject to the provisions of the U.S. Carriage of Goods by Sea Act, 1936 ("COGSA") in respect of carriage of goods to and from a port of the United States or its possessions. If, this Bill of Lading is issued for carriage from a port in Canada then, this bill of lading shall have effect subject to the terms of the Canadian Carriage of Goods by Water Act, 1985. If this Bill of Lading is issued for carriage other than stated above, then this bill of lading shall have effect subject to the provisions of the Hague Rules contained in the International Convention for Unification of Certain Rules Relating to Bills of Lading, dated Brussels, August 25, 1924, as enacted in the country of shipment, or if no such enactment is compulsorily applicable, the provisions of said Convention shall apply by agreement. The provisions of COGSA, Canadian Carriage of Goods by Water Act, said enactment or said Convention, whichever may be applicable, are hereby incorporated herein and shall apply throughout the entire time the goods are in the Carrier's custody, including before loading and after discharge as long as the goods remain in the custody of the Carrier or its subcontractors. Nothing herein contained is to be deemed a surrender by the Carrier of its rights, immunities, exemptions or limitations or an increase of any of its responsibilities or liabilities under COGSA or the Canadian Carriage of Goods by Water Act, said enactment or the Convention, or Clause 18(b) hereof.

**2. Definitions.** The following definitions shall apply in this Bill of Lading:
**Vessel:** Shall include the vessel named herein or any substituted vessel, feeder vessel, lighter or other watercraft utilized by the Carrier.
**Carrier:** Shall include Cargo Consolidation Corp., the vessels, their owners, operators and demise charterers.
**Merchant:** Shall include the Shipper, Consignee, holder of this Bill of Lading, the receiver of the Goods and the owner of the Goods carried hereunder.
**Goods:** Shall include the merchandise and articles of any kind carried under this Bill of Lading, including commercial goods, packing or packaging materials and Merchant owned or leased containers of every description.
**Charges:** Shall include the freight and all expenses and money obligations whatsoever payable by the Goods or Merchant to the Carrier.
**Package:** Shall include any container, van, trailer, pallet, skid or cradle used to consolidate or unitise the Goods for carriage. Where the Box 17 (on the front hereof) lists both number of cartons as well as number of "pallets" or "skids", it is specifically agreed between the Merchant and Carrier that the number of "pallets" or number of "skids" will constitute the Package.
**Government and Authorities:** Shall include the United Nations, the European Union and any similar international organization, as well as a sovereign state or political subdivision thereof, port authority, customs official and any person or entity acting or purporting to act for any such Government or Authority. **At the risk and expense of the Goods:** Or any like terms shall include, in addition, at the risk and expense of the Merchant.

**3. Defenses Extended to Subcontractors and Others.** It is expressly agreed by the Carrier and the Merchant that the Vessel named herein, or any substitute or other vessel or watercraft, and the Master, crewmembers, servants and agents of the Carrier and all or any subcontractors of the Carrier, including any Participating Carriers, performing any part of the carriage or service covered by this contract, as well as any stevedores, terminals, security services or warehouses used by the Carrier or Participating Carrier to perform any part of this contract, and their servants, agents, or any sub-contractors appointed by any of the parties so mentioned, shall each be a beneficiary of this contract and shall be entitled to all the exemptions, immunities and defenses, limitations of liability and time to sue limitation and other benefits which the Carrier, has under this Bill of Lading, its tariffs, U.S. COGSA, or under any law compulsorily applicable to this Bill of Lading and all such persons shall be deemed to be third-party beneficiaries of this Bill of Lading contract.

**4. Right to Carry on Deck, Deck Cargo.** Carrier shall have the right to stow goods in containers, vans or trailers and to carry containers, vans, trailers, trucks or similar heavy rolling equipment, heavy cargo, yachts and hazardous cargo on deck of the vessel without notice to the Merchant, and if carried on deck, such cargo shall by this contract be subject to the provisions of COGSA, Canadian Carriage of Goods by Water Act, or the enactment or Convention which is applicable under Clause 2 hereof, notwithstanding any exclusion of on deck cargo therein, and the Carrier shall not be required to specially note any statement of such deck carriage on this Bill of Lading, any custom to the contrary notwithstanding. With respect to goods carried on deck and stated herein to be so carried, all risks of loss or damage inherent in such carriage shall be borne by the Merchant, reserving to the Carrier the right to invoke the defences and limitations contained in U.S. COGSA and by this contract. Unless noted in writing by the Carrier on the face hereof, any agreement by Carrier or Carrier's agents to carry containers under deck shall be null and void.

**5. Merchant's Responsibility.** The weights of single pieces or packages exceeding two (2) tons shall be declared in writing by the Shipper and clearly and durably marked on the outside of each piece or package and Merchant shall be liable to pay extra charges for loading, handling, transshipping or discharging in accordance with the applicable tariff rates. The Merchant guarantees the accuracy of the particulars furnished to the Carrier by the shipper, including weight and measurement and the type of package actually shipped in a sealed container. The Merchant warrants that the goods are safely and securely packed in containers and warrants that it has fully disclosed the number of packages packed by it or its agent inside the container and agrees that the "package" for limitation purposes, if any, shall be any palletised and/or unitised assemblage of cartons which has been palletised and/or unitised for the convenience of the Merchant, regardless of whether said pallet or unit is disclosed on the face hereof. Merchant further warrants that it has ascertained and fully disclosed on the face hereof in the Particulars any hazardous or potentially dangerous characteristics of the goods. The Merchant warrants that any Merchant loaded and sealed container tendered to the Carrier is in conformity with all applicable international and/or national regulations relating to the safe and proper carriage of hazardous cargo and containerised cargo.

**6. Containers Stuffed by Shipper.** The Carrier shall not be responsible for the safe and proper stowing of Goods in containers if such containers are loaded with goods by the Merchant, or its agent, consolidator or inland carrier, and no responsibility shall attach to the Carrier for any loss or damage caused to Goods by shifting, overloading or improper packing of containers. Containers not loaded by the Carrier, shall be properly sealed and the seal identification reference, as well as the container reference, shall be shown herein. The Merchant, or its agent, shall inspect containers before loading them. Loading of any containers by Merchant or its agents shall be prima facie evidence that the containers were clean, sound, watertight, free of harmful odours and suitable for shipment of the particular Goods described herein. The Merchant agrees to be liable for, and shall indemnify and hold harmless the Carrier, and the Carrier shall have a lien on the goods for any kind of property damage or personal injuries caused by the contents of said container(s) at any time, to property (including other cargo on board the Vessel) or to persons, also for any loss, damage, delay, or expense whatever including legal fees and expenses, resulting from any failure of the Merchant, or its agent, to comply with provisions of this paragraph or of Clause 5, above.

**7. Duration of Liability, Port-to-Port Transport, Reconditioning of Goods and Repair of Containers. Carrier's Lien.** The Carrier's custody or responsibility for Goods shall not commence until the Goods are received by the Carrier at port of loading, or place of receipt, if intermodal carriage is contracted for, regardless of whether a Port Receipt is issued on behalf of the Carrier. Delivery of Port-to-Port shipments shall take place when the Goods are discharged onto a safe wharf, craft or other landing place. The Merchant shall check vessel's arrival with Carrier's agent and be ready to take delivery, as soon as goods are landed, including Saturdays, Sundays and holidays. Where goods are, according to custom of discharge port, turned over to port authorities or stevedores or watercraft not independently employed by Carrier, delivery to such authorities, stevedores or watercraft shall be considered final delivery to Merchant. If the Merchant fails to take delivery of the goods as provided herein, containers may be unstuffed and the goods stored at his risk and expense of the goods and after 30 days may, at option of the Carrier, be deemed abandoned and sold for the account of whom it may concern. The Merchant shall be liable for and shall indemnify the Carrier and Vessel, and the Carrier shall have a lien on the Goods or their proceeds for all expenses of storage, sale, coopering, repairing, fumigating, repacking or reconditioning the Goods. Carrier shall also have a lien on the Goods for all expenses incurred in repairing containers damaged while in the custody of the Merchant, for demurrage on containers, for terminal storage charges and for all legal fees and expenses incurred in connection with the enforcement of any provision of this Bill of Lading. The Carrier's lien shall survive delivery and may be enforced by private or public sale without notice.

**8. Scope of Voyage, Delay, Consequential Damage.** The scope of voyage herein contracted for may or may not include usual or customary or advertised ports of call whether named in this Bill of Lading contract or not. The Carrier does not undertake to load, carry, or discharge cargo on or by any particular vessel, date or time. Advertised sailings and arrivals are only estimated time, and such schedules may be advanced or delayed without notice. In no event shall the Carrier be liable for consequential damages or for any delay in scheduled departures or arrivals of any vessel or other conveyances used to transport the goods by sea, land or air.

**9. Liberties.** In any situation whether existing or anticipated before commencement or during the voyage, including political turmoil, strikes and work stoppages or bad weather which, in the Carrier's or Master's judgment, may give rise to risk of damage, delay or disadvantage to the vessel, her cargo or persons aboard, or make it imprudent to begin or continue the voyage, or to enter or discharge at any port, or give rise to delay or difficulty in arriving or leaving any port, the Carrier may decline to receive, keep, or load the Goods or may discharge the Goods at any safe port, or retain the Goods on board until the return trip or such time as the Master thinks advisable, or may forward or tranship the Goods by any means, but always at the risk and expense of the Goods, or may require the Merchant to take delivery at port of shipment or elsewhere, and if it fails to do so promptly the Carrier may store the Goods at the expense and risk of the Goods or invoke the provisions of Clause 7, above. For extra services rendered pursuant to this clause the Carrier shall be entitled to reasonable extra compensation.

**10. Transhipment.** Where the Goods are consigned to a port, or place not served by the Carrier, and transhipment is indicated on the face hereof, the Carrier may, without notice, tranship the Goods by any other vessel or other means of transportation not operated by the Carrier. The Carrier, in making any arrangements for transhipment by any means of transportation not operated by it, shall be deemed the AGENT of the Merchant without any other responsibility whatsoever. The on-carriage shall be subject to the terms of the on-carrier's current regular form of bill of lading or other contract, whether issued or not, even though such terms may include a lower limitation of liability or otherwise be less favourable to the Merchant than the terms of this Bill of Lading which shall operate only as a receipt or document of title (if negotiable) after transhipment has taken place. Pending or after transhipment, the Goods may be stored ashore or afloat at their risk and expense until collected by the Merchant. Any and all liability of the Carrier incurred in connection with transhipment shall, in all respects, be subject to the terms and conditions contained herein, including but not limited to Clause 14, Limitation Per Package or Freight Unit.

**11. Goods Not Identifiable.** Goods not identifiable by marks or numbers shall be allocated for computing delivery to the various consignees of Goods of like character in proportion to any apparent loss or damage. Any loss or damage to combined shipments of bulk cargo shall be apportioned among them.

**12. Freight and Charges. Carrier's Lien.** Freight may be calculated on the basis of the Shipper's Particulars but the Carrier may, without notice to Merchant, open the containers or packages and examine, weigh and measure the Goods to verify freight charges, and if such particulars are found to be erroneous and additional freight is payable, the Merchant shall be liable therefore and also for any expense thereby incurred. Full freight to the named port of discharge and other charges (including charges by on-carriers) shall be completely earned on receipt of the Goods by the Carrier, whether prepaid or collect, and the Carrier shall be entitled to all freight and charges, and any extra expenses incurred in respect of the Goods, whether actually paid or not, and to receive and retain them under all circumstances, vessel and/or cargo lost or damaged, or the voyage changed, broken up, frustrated or abandoned. All unpaid freight and charges shall be paid in full, without offset, counterclaim or deduction, in the currency of the port of shipment or, at Carrier's option, of the port of discharge at the demand rate of New York exchange quoted on the day of the Vessel's custom house entry at the port of discharge. The Carrier shall have a lien on the Goods and any documents related thereto, for all freight charges, general average, and sums referred to herein including legal fees, whether due under this contract of carriage, or any other or earlier contract of carriage, and may enforce these liens by public or private sale without notice and shall be entitled to recover all expenses and attorney's fees incurred in the sale. The Carrier's lien shall survive delivery of the Goods and shall apply to the proceeds of any sale of the Goods. The Shipper, Consignee and owner of the Goods and holder of this Bill of Lading shall be jointly and severally liable to the Carrier for the payment of all freight and charges and for the performance of the obligations of each of them hereunder. Any freight broker, forwarder, person, firm or corporation engaged by any party to perform forwarding services with respect to the cargo shall be considered to be the exclusive agent of the Merchant for all purposes, and any payment of freight to such third parties shall not be considered payment to the Carrier in any event. Failure of such third parties to pay any part of the freight to the Carrier shall be considered a default by the Merchant in the payment of freight.

**13. General Average and Salvage.** General Average shall be adjusted, stated and settled in New York according to York-Antwerp Rules 1994 except Rule XXII (or any subsequent amendments thereto) and, as to matters not therein provided for, according to the laws and usages at New York. Average agreement or bond and such cash deposit (payable at Carrier's option in United States currency) as the Carrier may require as additional security for the contribution of the Goods and salvage and special charges thereon, shall be furnished before delivery. In the event of accident, danger, damage or disaster, before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible by statute, contract, or otherwise, the Goods and the Merchant shall, jointly and severally, contribute with the Carrier in General Average to the payment of any sacrifices, losses, or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the Goods, as determined by a duly appointed independent General Average adjuster, and his determination as to liability for General Average contribution and his computation for the same shall be final and binding on all parties to the venture. If a salvaging ship is owned or operated by the Carrier, salvage shall be paid for as fully and in the same manner as if such salvaging ship or ships belong to strangers.

**14. Limitation Per Package or Freight Unit.** In case of any loss or damage to or in connection with Goods or deck cargo exceeding in actual value $500, lawful money of the United States, per package or, in case of goods not shipped in packages, per customary freight unit, the value of the goods shall be deemed to be $500 per package or per customary freight unit, and the Carrier's liability in any capacity including as agent for arranging on-carriage, if any, shall be determined on a value of $500 per package or per customary freight unit. The Merchant may avoid the application of the package limitation by declaring the full value of the Goods to the Carrier, at the time of booking, and by paying an additional freight charge to Carrier, in accordance with the Carrier's Tariff. In the event that the actual value of the goods per package or per customary freight unit shall exceed such declared value, the value shall nevertheless be deemed the declared value and the Carrier's liability in any capacity, if any, shall not exceed the declared value. In no event shall the Carrier be liable for any amount in excess of the actual value of the Goods. It is agreed that the meaning of the word "Package" includes a container, van, trailer, pallet, skid, cradle or unitized load, shipped hereunder. Where the Box 17 (on the front hereof) lists both number of cartons as well as number of "pallets" or "skids", it is specifically agreed between the Merchant and Carrier that the number of "pallets" or number of "skids" will constitute the Package.

**15. Limitation of Liability and Fire Statutes.** The Carrier whether owner or time or voyage Charterer of the vessel shall be entitled to the full benefit of, right to, all limitation of, or exemption from, liability contained in Sections 4281 to 4286 both inclusive of the Revised Statutes of the United States, and amendments thereto, and any other provisions of the laws of the United States or of any other country whose laws shall apply. Nothing in this bill of Lading shall operate to limit or deprive the Carrier of any statutory protection or exemption from, or limitation of liability, which would have been applicable in the absence of any terms set forth herein, or to increase its responsibilities or liabilities under any statute.

**16. Notice of Loss, Time Bar, Law and Jurisdiction.** Notice of loss or damage or any other claim of whatsoever description and its general nature must be given in writing to the Carrier or its agent at the port of discharge or place of delivery before or at the time of the removal of the goods into the custody of the person entitled to delivery. If the loss or damage is not apparent, the written notice must be given within three days of the delivery. In any event, the Carrier, the Vessel and others mentioned receiving the protections of this Bill of Lading, shall be discharged from liability in any capacity unless suit is brought within one year after delivery or the date when goods should have been delivered under a port-to-port bill of lading. In the case of a combined transport bill of lading where loss and/or damage occurs during any non-marine portion of the transport, within the time period provided by the land and/or rail carrier's bill of lading or regular form contract of carriage and/or applicable tariff, even if such time period is less than one year. All law suits alleging any claim causes of action or any dispute whatsoever, arising under or in connection with this Bill of Lading shall be referred exclusively to and shall be subject to the sole and exclusive jurisdiction of the United States District Court, Southern District of New York, under U.S. Law, including U.S. COGSA, 1936, and its $500 limitation shall be applied in such suits.

**17. Both to Blame Collision.** If the Vessel comes into collision with another vessel or vessels or any other object, as a result of fault or negligence on the part of the other vessel or other object, or of those charged with the operation or maintenance thereof, and any act, neglect or default of the Master, pilot, mariners or servants of the Carrier in the navigation or management of the Vessel, the Merchant will indemnify the Carrier against all loss of liability, to other or non-carrying vessel or vessels or other objects or her, its or their owners insofar as such loss or liability represents loss of, of damage to, or any claim whatsoever of said goods or the owner thereof, paid or payable by the other or non-carrying vessel or vessels or other objects, or subject to set-off, recoupment or recovery by the other non-carrying vessel or vessels or other objects or her, its or their owners as part of their claim against the carrying vessel or Carrier. The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than or in addition to, the colliding vessel or objects are at fault in respect of a collision or contact. This clause is to remain in effect in other jurisdictions even if unenforceable in the Courts of the United States of America.

**18. Combined Transport.** If "Place of Receipt" and/or "Place of Delivery", Boxes 4 and 10 on the front hereof, are filled out, and applicable freight is paid, this is a Combined Transport Bill of Lading. Where, in case of Combined Transport, the loss or damage has occurred during the non-maritime part of the carriage (during land or air carriage), the liability of the Carrier in respect of such loss or damage shall be determined a)by the provisions contained in any international convention or national law applicable to the means of transport utilized, if such convention or law would have been compulsorily applicable in case a separate contract had been made in respect to the particular stage of transport concerned, or b)where no international convention or national law would have been compulsorily applicable, by the land or air carrier's contract of carriage, including any limitations and exceptions contained therein, which contract the Merchant and the Carrier adopt and incorporate by reference, it being the intent of these parties that the Carrier's rights and liabilities shall be commensurate with those of the underlying land or air carrier or c) if any court shall determine that no international convention or national law would have been compulsorily applicable and that the Carrier may not determine its liability, if any, by reference to the contract of carriage of the land or air carrier's contract of carriage or where said land or air carrier does not have a contract of carriage, then it is contractually agreed as between Merchant and Carrier that the Carrier's liability shall be determined as if the loss and/or damage complained of took place while on board the vessel.

**19. Refrigeration, Heating, Insulation, or Ventilation.** Special containers or cargo space with refrigeration or heating or insulation or mechanical ventilation shall not be furnished unless contracted for on the face of this Bill of Lading and extra freight paid. If a carriage temperature is noted on the bill of lading, the Merchant shall deliver Goods to the Carrier at plus or minus 2 Degrees Celsius from noted temperature, and the Carrier shall exercise due diligence to maintain such temperature, plus or minus 2 Degrees Celsius while the Goods are in its possession. The Carrier shall not be responsible for control and care of refrigeration units on containers which such containers are not in the actual possession of the Carrier. It shall be the responsibility of the Merchant to inspect any refrigerated, ventilated or mechanical container upon receipt, before loading Goods into said container. Merchant's acceptance and use of any tendered container shall constitute Merchant's agreement that the tendered container was fit for all purposes and in good working condition. IT IS THE MERCHANT'S OBLIGATION TO SET THE TEMPERATURE CONTROLS ON THE CONTAINER AT THE REQUIRED CARRYING TEMPERATURE. Carrier does not undertake to deliver empty refrigerated containers to Merchant at any specific temperature and will not accept any container loaded by the Merchant for shipment that is not set at the contracted carrying temperature. The Carrier does not warrant refrigeration machinery but shall exercise reasonable care in its operation and maintenance while in the actual possession of the Carrier. Carrier will not accept responsibility for the recording of temperatures in any form other than any Reefer Log Book maintained on board the carrying vessel. Carrier will not guarantee compliance with any governmental program or protocol unless noted on the front hereof and unless additional freight is paid.

**20. U.S. Trade Routes.** If this Bill of Lading is issued for carriage originating in or delivered at any place in the United States of America, then this Bill of Lading shall be exclusively subject to the United States Carriage of Goods by Sea Act and nothing contained herein shall constitute a waiver by the Carrier of any of the rights, defences and limitations contained in said Act. Specifically and without limitation, any claim for damage and/or loss of cargo shall be subject to the US$500.00 limitation contained in the U.S. Carriage of Goods by Sea Act and nothing herein shall constitute an agreement by the Carrier to increase said limitation amount on its own behalf or on behalf of any other party to which the protections of this Bill of Lading are extended. The terms and provisions of the United States Federal Bill of Lading Act or any amendments thereto ("Pomerene Act") are hereby incorporated into this Bill of Lading contract for any shipment originating outside of the United States of America or its territories or possessions, which is destine for delivery in the United States of America or its territories or possessions, as if said Act was compulsorily applicable to such carriage.

**21. Dangerous Goods.** No Goods which are or may become dangerous, inflammable or damaging (including radioactive material), or which may become liable to damage any property whatsoever, shall be tendered to the Carrier for carriage without the express written consent of the Carrier and without the container or other covering in which the Goods are to be carried as well as the Goods themselves being distinctly marked on the outside so as to indicate the nature and character of any such Goods and so as to comply with any applicable laws, regulations or requirements. If any such goods are delivered to the Carrier without such written consent and/or markings, or if in the opinion of the Carrier the Goods are or are liable to become of a dangerous, inflammable or damaging nature, they may be at any time destroyed or disposed of, or abandoned or rendered harmless without notice and without compensation to the Merchant and without prejudice to the Carrier's right to freight and the Carrier's right to seek damages for any loss or expense associated with the Goods, including reasonable attorney fees. The Merchant undertakes that such Goods are packed in a manner adequate to withstand the risks of carriage having regard to their nature and compliance with all laws or regulations which may be applicable to the carriage. Whether or not the Merchant was aware of the nature of the Goods, the Merchant shall indemnify the Carrier against all claims, losses, damages and expenses arising in consequence of the carriage of such Goods, including but not limited to damage to the Vessel, property of the Carrier and its agents and servants as well as cargo belonging to other parties. Nothing in this Clause shall act to deprive the Carrier of any right, limitation and/or exception appearing herein or available to it at law.

**22. Separability of Terms. Final Contract.** The terms of this Bill of Lading shall be separable and, if any term or provision hereof or any part of any term or provision shall be invalid to any extent, it shall be invalid to that extent, but no further and such circumstance shall not affect the validity or enforceability of any other term or provision hereof. This Bill of Lading is the final contract between the parties which supersedes any prior agreement or understanding, whether in writing or verbal. This Bill of Lading and its terms and conditions may not be changed orally.